UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|   *vs.* | ) | 2:15-cr-00022-JMS-CMM |
| | ) | |
| DAVID ROBERTS, | ) | |
|     *Defendant.* | ) | |

## ORDER DENYING MOTION TO SUPPRESS

Presently pending before the Court is Defendant David Roberts' Motion to Suppress, [Filing No. 30], which the Government opposes, [Filing No. 37]. Mr. Roberts seeks to suppress evidence obtained pursuant to a search warrant for various electronic devices because he contends that the evidence on which the probable cause affidavit relied was stale and there was not a sufficient nexus between the seized items and the illegal activity. [Filing No. 30-1.] For the following reasons, the Court denies Mr. Roberts' motion. [Filing No. 30.]

### I.
### FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION[1]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

---

[1] In his Memorandum of Law, Mr. Roberts references various Indiana state statutes and Indiana state court decisions. [Filing No. 30-1.] The Court will neither address nor consider these sources, given that Mr. Roberts has been indicted in federal court and federal law controls. *See, e.g.*, *United States v. Singer*, 943 F.2d 758, 761 (7th Cir. 1991) ("[F]ederal standards control the admissibility of evidence in a federal prosecution even though the evidence was seized by state officials . . . and accordingly, the officers' compliance or lack of compliance with [state] law . . . is irrelevant. Rather, the proper standard for federal application provides that evidence seized by state law enforcement officers is admissible in a federal criminal proceeding if it is obtained in a manner consistent with the protections afforded by the United States Constitution and federal law.") (citations omitted); *see also United States v. Wilderness*, 160 F.3d 1173, 1175 (7th Cir. 1998) ("We have held repeatedly that evidence may be used [in a federal prosecution] whether or not its acquisition violated state law.").

1

"When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." *United States v. Carroll*, 750 F.3d 700, 703-04 (7th Cir. 2014) (quoting *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014)). "Courts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports his decision." *Carroll*, 750 F.3d at 704.

When an affidavit is the only evidence presented to support a search warrant, "the validity of the warrant rests solely on the strength of the affidavit." *United States v. Mykytiuk*, 402 F.3d 773, 775 (7th Cir. 2005) (citation omitted). An affidavit establishes probable cause when "it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.* at 773. The issuing judge must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008). The judge may not, however, solely rely upon conclusory allegations or a bare bones affidavit to issue the warrant. *Id.*

## II.
### BACKGROUND

The following background is set forth from the attestations in the Affidavit of Probable Cause ("the Affidavit") signed by Detective Travis M. Chesshir of the Terre Haute Police Department. [Filing No. 30-2 at 1-4.]

On October 1, 2014, Detective Chesshir received an anonymous tip advising him that a fifteen-year-old girl ("Girl 1") had discovered a hidden camera behind her vanity mirror in her bedroom. [Filing No. 30-2 at 3.] The anonymous source informed Detective Chesshir that Girl 1 had also found a pair of her underwear and a recording device in her father's bedside table. [Filing No. 30-2 at 3.] Girl 1's father is Mr. Roberts. [Filing No. 30-2 at 3.] The anonymous source told

Detective Chesshir that Mr. Roberts' wife ("S.R.") later confronted Mr. Roberts and that Mr. Roberts admitted that he placed the hidden recording device in Girl 1's room and placed the underwear in his drawer so that he could smell it to help him get an erection. [Filing No. 30-2 at 3.]

On October 3, 2014, Detective Chesshir and another detective spoke to Girl 1 at her school. [Filing No. 30-2 at 3.] Girl 1 told the detectives that, approximately a year earlier, she noticed what appeared to be a camera lens behind the vanity mirror in her bedroom. [Filing No. 30-2 at 3.] When she asked Mr. Roberts about it, he stated that he needed to fix the vanity and removed the object from behind the mirror. [Filing No. 30-2 at 3.] Girl 1 told the detectives that she did not tell her mother about the incident for approximately one year because she was scared of Mr. Roberts. [Filing No. 30-2 at 3.] When Mr. Roberts took a trip to the Philippines during the last two weeks of August 2014, however, Girl 1 told her adult sister what she had found. [Filing No. 30-2 at 3.] Girl 1 and her adult sister told their mother—S.R.—about what had happened approximately one week before Mr. Roberts returned home from the work trip. [Filing No. 30-2 at 3.]

On October 3, 2014, S.R. went to Terre Haute Police Headquarters to give a voluntary statement. [Filing No. 30-2 at 3.] She explained that on August 24, 2014, her daughters told her that Mr. Roberts had hidden video cameras in their rooms and bathroom and that a camera and a pair of Girl 1's underwear had been found in Mr. Roberts' bedside table. [Filing No. 30-2 at 3.] S.R. stated that she had confronted Mr. Roberts when she picked him up from the airport on August 30, 2014, and that Mr. Roberts had admitted to placing a hidden camera in both of the girls' bedrooms as well as in their bathroom to "monitor their behavior and try to prevent them from doing bad things." [Filing No. 30-2 at 3.] S.R. said that Mr. Roberts told her that he had Girl 1's

underwear because he "was having trouble 'being a man.'" [Filing No. 30-2 at 3.] S.R. told the police that she did not believe that Mr. Roberts was using the cameras to try to monitor the children's behavior and that she believed he had placed the cameras in those locations for sexual reasons. [Filing No. 30-2 at 3.] S.R. informed the police that the camera and the underwear were located in the trunk of her car where the spare tire goes. [Filing No. 30-2 at 3.] S.R. signed a consent to search her vehicle, and officers searched the car and seized various cameras and the underwear. [Filing No. 30-2 at 3; *see also* Filing No. 1 at 5.] S.R. also signed a consent to search her residence for computers, flash drives, cameras, and any other material that may have data storage on it. [Filing No. 30-2 at 4.]

On October 3, 2014, Mr. Roberts was escorted to the Terre Haute Police Department to give a voluntary statement. [Filing No. 30-2 at 4.] He was read his rights, at which time he told Detective Chesshir that he would not speak with law enforcement until he had a lawyer present. [Filing No. 30-2 at 4.] Mr. Roberts' cell phone was confiscated, and police officers transported him back to his residence. [Filing No. 30-2 at 4.]

At the Roberts' residence, Detective Chesshir met Mr. Roberts' mother ("R.M."). [Filing No. 30-2 at 4.] R.M. told Detective Chesshir that she would come to the police station to give a statement. [Filing No. 30-2 at 4.] At the station, R.M. told Detective Chesshir that Mr. Roberts had hidden a camera in Girl 1's bedroom to monitor her behavior. [Filing No. 30-2 at 4.] R.M. stated that she thought this was "absurd because everyone knew that [Girl 1] was 'the perfect one'" and had never been in trouble. [Filing No. 30-2 at 4.] R.M. also stated that Mr. Roberts had told her that he had a pair of underwear in his bedroom that he smelled it to get an erection, but that he did not know whose underwear it was. [Filing No. 30-2 at 4.] When Detective Chesshir asked R.M. if she believed that Mr. Roberts had recorded the girls for sexual reasons, R.M. began to cry

4

and would not answer that question. [Filing No. 30-2 at 4.] R.M. also told Detective Chesshir that Mr. Roberts had told her that he had placed a camera in his adult daughter's bedroom while she was living in his home. [Filing No. 30-2 at 4.]

On October 7, 2014, based on Detective Chesshir's attestations in the Affidavit, Judge Michael Rader of the Vigo Superior Court issued a Search and Seizure Warrant. [Filing No. 30-2 at 5-7.] It specifically listed fifteen electronic devices that had been previously collected pursuant to S.R.'s consents to search the car and residence. [Filing No. 30-2 at 5.]

On October 10, 2014, law enforcement officers searched the seized electronic devices and discovered approximately 23,527 videos depicting adult and minor females in various stages of undress. [Filing No. 1 at 6.] It appeared that the videos were taken surreptitiously from cameras inside the Roberts' home, and it appears that the individual recording the videos watched many of them live because the camera zoomed in and out while individuals were on screen. [Filing No. 1 at 6.] A Special Agent with the Indianapolis Violent Crimes Against Children Task Force of the Federal Bureau of Investigation identified specific video compilations to be pornographic in nature and noted that at least six different minors were depicted in the videos. [Filing No. 1 at 8.]

On October 30, 2015, the Government filed a Complaint against Mr. Roberts in this Court. [Filing No. 1.] The Government filed an Indictment on November 17, 2015, charging Mr. Roberts with two counts of production of child pornography pursuant to 18 U.S.C. § 2251(a) and one count of possession of child pornography pursuant to 18 U.S.C. § 2252A(a)(5)(B). [Filing No. 10.] Mr. Roberts has filed a Motion to Suppress Evidence, [Filing No. 30], which is now fully briefed and ready for the Court's review, [Filing No. 37; Filing No. 38].

## III.
### DISCUSSION

Mr. Roberts argues that all of the evidence obtained from the search of the electronic devices must be suppressed because the Affidavit relied on stale information that is insufficient to support probable cause. [Filing No. 30-1 at 4-10.] Mr. Roberts also contends that the evidence must be suppressed because the Affidavit fails to establish a nexus between the items searched and illegal activity. [Filing No. 30-1 at 10-12.]

In response, the Government asserts that the information in the Affidavit was not impermissibly stale and that it provided a sufficient nexus between the alleged criminal conduct and the devices to be searched. [Filing No. 37 at 12; Filing No. 37 at 14-15.] Additionally, the Government argues that even if the Affidavit did not provide probable cause to issue the warrant, the search was still permissible under the good faith exception. [Filing No. 37 at 17-18.]

In reply, Mr. Roberts maintains that there was no probable cause because the information in the Affidavit was stale and failed to establish the required nexus. [Filing No. 38 at 2; Filing No. 38 at 8.] He also argues that the good faith exception does not apply because the Affidavit "is so factually deficient that no reasonable officer could rely upon the issuing judge's finding of probable cause." [Filing No. 38 at 9-10.]

**A. Staleness**

Mr. Roberts contends that the information provided in the Affidavit was stale because approximately one year passed between when Girl 1 allegedly discovered the video camera in her room and when the warrant was issued. [Filing No. 30-1 at 9.] Mr. Roberts also emphasizes that the camera was removed during that time. [Filing No. 30-1 at 9.] The Government argues that the information in the Affidavit was not stale because the Affidavit was executed thirty-seven days after Girl 1 told S.R. and only three days after S.R. came to the police. [Filing No. 37 at 12-13.]

6

There is no bright-line rule for determining the time at which information becomes too stale to support a finding of probable cause. *Carroll*, 750 F.3d at 705. In a case involving a child pornography offense "a staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology." *Id.* at 704 (citing *United States v. Seiver*, 692 F.3d 774, 776-77 (7th Cir. 2012)). In *Carroll*, the Seventh Circuit reaffirmed why staleness is "rarely relevant" when analyzing the probable cause required to search a computer for child pornography:

> While acknowledging that the longer the interval between uploading of the material sought and the search of the computer, the greater the possibility that a deleted file will no longer be recoverable because it has been overwrittten or because the computer has been sold or destroyed, this Court explained that:
>
>> rarely will [these possibilities] be so probable as to destroy probable cause to believe that a search of the computer will turn up the evidence sought; for probable cause is far short of certainty—it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity, and not a probability that exceeds 50 percent ("more likely than not"), either. Notice too that even if the computer is sold, if the buyer can be found the file will still be on the computer's hard drive and therefore recoverable, unless it's been overwritten.
>
> ***
>
> No doubt after a very long time, the likelihood that the defendant still has the computer, and if he does that the file hasn't been overwritten, or if he's sold it that the current owner can be identified, drops to a level at which probable cause to search the suspect's home for the computer can no longer be established. But seven months is too short a period to reduce the probability that a computer search will be fruitful to a level at which probable cause has evaporated.
>
> ***
>
> The most important thing to keep in mind for future cases is the need to ground inquiries into "staleness" and "collectors" in a realistic understanding of modern computer technology and the usual behavior of its users. Only in the exceptional case should a warrant to search a computer for child pornography be denied on either of those grounds (there are of course other grounds for denial).

7

*Carroll*, 750 F.3d at 706 (quoting *Seiver*, 692 F.3d at 777-78).

In *Carroll*, the Seventh Circuit affirmed that probable cause existed for a search warrant based on five-year-old information in part because of the typical behavior of child pornographers. 750 F.3d at 704-08. It noted that the "hoarding habit among collectors of child pornography is well established." *Id.* at 704. Moreover, "[w]hile pornographic images of anonymous children could be replaced with images of other anonymous children," unique images created by the defendant are "irreplaceable to him" and it is fair for an issuing judge to infer that the defendant "would highly value the images of the victim and retain them on some type of digital media for a very long time." *Id.* at 705.

To support probable cause, an affidavit need not explain in detail the technological underpinnings of the belief that child pornography will be recoverable from an individual's computer. *Seiver*, 692 F.3d at 777-78 ("Some cases . . . say it's important that the search warrant affidavit apprise the magistrate asked to issue the warrant that deleted files are recoverable. That may be prudent, because some magistrates may not know a great deal about computers, but it shouldn't be required to make the warrant valid; it is or should be common knowledge."). Similarly, the affidavit need not specifically allege that child pornography offenders tend to keep, rather than delete or discard, their collection of images. *See United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) ("In this case, although the affidavit before the judge did not explain specifically that collectors of child pornography tend to hold onto their stash for long periods of time, it was clear from the context that the police believed that Newsom probably still had the year-old images or something similar on his computer."). There must, however, be some factual basis indicating the target individual's involvement in a child pornography offense before it can

8

be assumed that he may be hoarding a collection on his computer that will remain recoverable for an extended period. *United States v. Pappas*, 592 F.3d 799, 804 (7th Cir. 2010).

Any issue regarding staleness can be further minimized if the affidavit contains other more recent information supporting the finding of probable cause beyond that which the defendant contends is stale. *See Newsom*, 402 F.3d at 783 (finding that recently discovered explicit material corroborating the allegedly stale evidence was relevant in determining that probable cause existed). Furthermore, "[i]t is well established that the passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity." *United States v. Mitten*, 592 F.3d 767, 775 (7th Cir. 2010) (quotations omitted) (quoting *United States v. Pless*, 982 F.2d 1118, 1125-26 (7th Cir. 1992)).

In Mr. Roberts' case, the parties dispute whether the information contained in the Affidavit is more than one year old (Mr. Roberts' position) or is only thirty-seven days old (the Government's position). [Filing No. 30-1; Filing No. 37.] Specifically, the parties dispute whether the age of the information at issue is based on when Girl 1 first discovered the video camera in her room or when she told S.R. The Court concludes that even if it agrees with Mr. Roberts that the information was more than one year old, it was not stale enough to destroy probable cause. As *Carroll* recognized, the "most important" thing to keep in mind in this analysis is the need to ground staleness inquiries in a realistic understanding of modern computer technology and the usual behavior of its users. 750 F.3d at 707. Here, because the Affidavit attests that Mr. Roberts personally recorded Girl 1, and particularly in light of their familial relationship, he would be likely to keep the images longer since they would be "irreplaceable to him." *Id.* at 705. Thus, even if the Court considers the information at issue to be more than one year old, it is not near old enough to destroy probable cause. *See id.* at 706 (affirming decision to deny motion to suppress

9

challenging probable cause for affidavit relying on five-year-old information that defendant personally was involved in taking pornographic images).

Throughout his motion, Mr. Roberts ignores *Carroll* and relies on *United States v. Doan*. [Filing No. 30-1 (citing 245 Fed. App'x. 550 (7th Cir. 2007)).] Mr. Roberts' reliance on *Doan* is misplaced.  As an initial matter, *Carroll* provides the most recent summary of binding Seventh Circuit precedent regarding probable cause in the context of child pornography, staleness of information, and technology.  Moreover, *Doan* is distinguishable because the Seventh Circuit found that the affidavit at issue in that case did not establish probable cause because it contained very limited information—only the fact that the defendant had subscribed seventeen months prior to two websites that contain child pornography.  245 F. App'x at 555.  The Court did not find, as Mr. Roberts suggests, that certain details about the defendant's computer use and technological abilities are always required to support a finding a probable cause.  Instead, *Doan* held that the mere fact that a person subscribed to a child pornography website seventeen months prior, without evidence that the person actually accessed or had the ability to access that website, is not a sufficient basis upon which to draw the inference that the person may have child pornography stored on his computer.  *Id.*

Unlike in *Doan*, the Affidavit in Mr. Roberts' case makes very specific allegations regarding Mr. Roberts' involvement in creating child pornography.[2]  The Affidavit sets forth the information Girl 1 told the police about finding a hidden video camera behind a mirror in her room

---

[2] Child pornography, as defined by federal law, includes material in which there is a lascivious exhibition—that is, an exhibition with a sexual purpose—of the genitals or pubic area of a child. *See* 18 U.S.C. § 2256(2)(A)(v), (8); *United States v. Russell*, 662 F.3d 831, 834 (7th Cir. 2011) ("A lascivious display is one that draws attention to the genitals or pubic area of the subject in order to excite lustfulness or sexual stimulation in the viewer.") (citation omitted) (quotations omitted).

and later locating it and her underwear in Mr. Roberts' drawer. It sets forth the information that S.R. told the police, which corroborates Girl 1's information, including S.R.'s allegation that Mr. Roberts confessed to her that he hid the camera in Girl 1's room and S.R.'s belief that he did so "for sexual reasons." [Filing No. 30-2 at 3.] It also contains information Mr. Roberts' mother gave to the police, including her allegation that Mr. Roberts confessed to placing the camera in Girl 1's room and that there were other cameras in the house for many years. [Filing No. 30-2 at 4.] These detailed attestations distinguish this case from *Doan* and make Mr. Roberts' case far from the "exceptional case" where a warrant to search an electronic device for child pornography should be denied for staleness. *Carroll*, 750 F.3d at 706. Thus, even if the Court considers the information in the Affidavit to be more than one year old, the information on which the Affidavit relied was not stale for purposes of establishing probable cause. *See also Newsome*, 402 F.3d at 783 ("Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned.").

      **B. Nexus and Probable Cause**

      Mr. Roberts also argues that the Affidavit failed to include facts necessary to establish a nexus between the items searched and the illegal activity alleged because it did not specify "important details" about his use of computers, his camera's ability to record and save images, whether his camera was ever connected to an electronic storage device, or "any connection to the alleged offense of production and/or possession of child pornography." [Filing No. 30-1 at 10-11.]

      In response, the Government asserts that this argument is "legally and factually flawed," maintaining that the Affidavit contained enough facts to allow the issuing judge to make "a common sense determination that data on cameras could be saved onto computers." [Filing No.

37 at 15.] Therefore, the Government argues, a sufficient nexus between the items searched and the illegal activity was alleged and probable cause existed to believe that child pornography would be found on the devices recovered from the residence and vehicle. [Filing No. 37 at 15.]

In reply, Mr. Roberts contends that the Affidavit "is so factually deficient that it is unclear whether the items searched were actually taken from the Defendant's residence" and it fails to include any meaningful information about the technology seized or Mr. Roberts' working knowledge of such technology. [Filing No. 38 at 8-9.] Additionally, he claims that his motion must be granted because "[i]f the Government's argument were to be accepted, every electronic device owned by the target of an investigation would be subject to search and seizure without a showing of probable cause specific to that individual and the particular facts of the case." [Filing No. 38 at 9.]

"Probable cause is a fluid concept that focuses on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Carroll*, 750 F.3d at 703 (quotations omitted). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grubbs*, 547 U.S. 90, 90 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (quotations omitted)). There need only be a "probability or substantial chance of criminal activity, not an actual showing of such activity." *Seiver*, 692 F.3d at 777 (quoting *Gates*, 462 U.S. at 244). For probable cause to be established, there must be some nexus between the items or premises to be searched and the illegal activity alleged, but that determination "does not require direct evidence linking a crime to a particular place. Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense." *United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007) (citation omitted).

Mr. Roberts emphasizes that the Affidavit does not contain information about the exact positioning of the cameras he allegedly admitted to planting and whether they were positioned to capture nudity. [Filing No. 30-1 at 10.] He ignores, however, that it was reasonable for the issuing judge to infer that the alleged location of the hidden camera that was found—Girl 1's bedroom—would likely result in it capturing images of her in various states of dress. He also ignores that the Affidavit cited information from other individuals, such as R.M., that there were other cameras hidden in the house, such as in a bathroom and in her older sister's bedroom. The Affidavit also contained a detailed list of electronic items that the police had already seized, including cameras, computers, and storage devices that were recovered pursuant to S.R.'s consent to search the Roberts' residence and vehicle.³ The issuing judge cited S.R.'s consent in the warrant authorizing the police to search the fifteen identified electronic devices, [Filing No. 30-2 at 5], and Mr. Roberts has not challenged his wife's authority to consent to the search of their jointly held property, *see Fernandez v. California*, 134 S. Ct. 1126, 1129 (2014) ("Our cases firmly establish that police officers may search jointly occupied premises if one of the occupants consents."). Finally, contrary to Mr. Roberts' assertion, the Affidavit did not need to cite evidence of the specific capabilities of the various electronic devices or that Mr. Roberts had downloaded pictures from the camera onto the computer or hard drive. [Filing No. 30-1 at 11-12]; *see also Wiley*, 475 F.3d at 916 (holding that although there must be some nexus between the items or premises to be searched and the

---

³ Mr. Roberts' contention that the Affidavit is unclear as to whether the items were in fact recovered from his residence is entirely without merit. He correctly points out that the address of his residence is not explicitly identified and that the Affidavit lists two different addresses from which the items to be searched were recovered. [Filing No. 38 at 8.] However, the Affidavit explains that one search was conducted of the vehicle while it was located at the police station and one search was conducted of the Roberts' residence. [Filing No. 30-2 at 3-4.] Accordingly, it was reasonable for the issuing judge to conclude that one of the listed addresses was the residence and the other was the location of the vehicle when it was searched.

illegal activity alleged, "[p]robable cause does not require direct evidence linking a crime to a particular place. . . . [I]ssuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense."). Instead, it was reasonable for the issuing judge to infer that evidence of Mr. Roberts' alleged child pornography crimes was likely to be found on the identified devices.

For these reasons, the Court concludes that the Affidavit sets forth a sufficient nexus between Mr. Roberts' alleged criminal activity and the electronic devices sought to be searched. In doing so, the Court rejects Mr. Roberts' slippery slope argument. [Filing No. 38 at 9.] The search in this case was not, as Mr. Roberts suggests, justified simply because Mr. Roberts was the target of a police investigation. Rather, it was justified because the Affidavit set forth specific factual details supporting "a probability or substantial chance of criminal activity," and it was reasonable for the issuing judge to infer that evidence of that activity would be found on the seized electronic devices. *See Seiver*, 692 F.3d at 777 (holding that there need only be a "probability or substantial chance of criminal activity, not an actual showing of such activity").

"[P]robable cause is far short of certainty," *id.*, and "the ultimate touchstone of the Fourth Amendment is reasonableness," *Fernandez,* 134 S.Ct. 1132. The Affidavit set forth specific allegations based on information from multiple sources close to Mr. Roberts, and some of their allegations had already been corroborated by the existence of certain evidence recovered pursuant to his wife's consent. For the reasons stated herein, the Court concludes that it was reasonable for the issuing judge to conclude that the detailed Affidavit provided probable cause to search the

identified electronic devices.  The search warrant at issue herein was valid, and Mr. Roberts' Motion to Suppress must be denied.[4]

## IV.
## CONCLUSION

For the reasons detailed herein, the Court **DENIES** Mr. Roberts' Motion to Suppress. [Filing No. 30.]

Date:  July 6, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF**:

William Gelder Smock
SMOCK & ETLING
smock.etling@frontier.com

Tiffany Jacqueline McCormick
UNITED STATES ATTORNEY'S OFFICE
tiffany.mccormick@usdoj.gov

---

[4] Because the Court concludes that the Affidavit established probable cause to justify the issuance of a warrant, the Court need not address the issue of whether the good faith exception applies.  The Court agrees with the Government, however, that even if the Affidavit did not set forth probable cause, the warrant and subsequent search would be saved by the good faith exception.  *See United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005) ("An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith.  A defendant may rebut this *prima facie* case by presenting evidence establishing . . . [that] the affidavit submitted in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.") (citations omitted).  The Court has already rejected the arguments on which Mr. Roberts relies to support his contention that the Affidavit was so lacking that the officers' reliance on it was unreasonable.  [Filing No. 38 at 9-10.]